UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 0:18-cr-110-DWF-KMM |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Mark Anthony Eggerson (1), and Keyeon Marquis Carson (2) Defendants. | |

The defendant Mark Anthony Eggerson filed pretrial motions in this matter and the Court conducted a hearing on those motions on July 10, 2018. (*See* ECF No. 58.) Remaining before the Court is Mr. Eggerson's Amended Motion to Suppress. (ECF No. 53.) Mr. Eggerson argues that the evidence resulting from the search of his cell phone should be suppressed for two reasons. First, he argues that a warrant issued on March 16, 2017, pursuant to which the phone was first searched, was so overbroad as to be a general warrant. Alternatively, he asserts that the search was invalid because that warrant did not authorize the search of his cell phone for evidence relating to firearm offenses. Mr. Eggerson's motion did not require testimony and was submitted on the pleadings. For the reasons set forth below, the Court recommends that Mr. Eggerson's motion be denied.

I.   Background

On March 16, 2017, Investigator James Mancuso testified before Judge Todd W. Bjerke of the La Crosse County, WI Court, in application of a warrant to search a residence in Campbell, Wisconsin and a particular vehicle. No written affidavit was submitted. Investigator Mancuso testified that on March 15, 2017, a confidential reliable informant arranged for and performed a controlled buy of 1.1 grams of heroin from Mr. Eggerson. (Govt. Ex. 1, 4:1–4:20.) Mr. Eggerson was seen leaving the Campbell, WI residence before arriving at the location of the controlled buy. (Govt. Ex. 1, 5:4–5:13.) The CI also arranged to purchase an additional amount of heroin and cocaine from Mr. Eggerson the following day, March 16th, and the record

suggests that officers were seeking an anticipatory search warrant to be executed after completion of that deal. (Govt. Ex. 1, 5:23–6:10.) Investigator Mancuso further testified that another investigator had informed him that Mr. Eggerson had allegedly been involved in an altercation involving a handgun two weeks prior. (Govt. Ex. 1., 7:20–8:8.) Investigator Mancuso indicated based on this information that he believed Mr. Eggerson would be armed should officers encounter him. (Govt. Ex. 1, 8:9–8:11.) Investigator Mancuso also testified that, in his experience, "big-time drug dealers who have been in prison are going to protect themselves with firearms." (Govt. Ex. 1, 9:22–10:4.)

Judge Bjerke issued the search warrant on the basis of Investigator Mancuso's testimony, authorizing the search of both the Campbell, WI residence and a black Dodge Charger that Investigator Mancuso believed Mr. Eggerson may be driving. (Govt. Ex. 2 at 1; *see* Govt. Ex. 1, 6:11–:22.) The warrant permitted the seizure of, in relevant part, "[r]ecords of transactions;" "[w]eapons, to include but not limited to firearms, and items tending to show possession and/or ownership of firearms such as…documentation;" "[f]inancial records, including but not limited to…other documents tending to identify assets;" "cellular telephones…and other electronic means of communication or personal data storage, to include any memory therein;" and "[e]lectronics, cellular telephones and the forensic examination of the data contained therein of these devices." (Govt. Ex. 2 at 2.)

The search warrant was executed that same day following the completion of the second controlled buy. Mr. Eggerson and two others were arrested, and an iPhone was seized from Mr. Eggerson's person. Investigator Mancuso promptly examined the cell phone. In addition to locating a text message that he believed indicated one of the other people arrested at the deal knew what was going on, he also discovered a video of Mr. Eggerson and his co-defendant, Mr. Keyeon Marquis Carson, allegedly firing assault rifles next to a building.[1]

---

[1] Because both the government and Mr. Eggerson agree that the Court's review is limited to the four-corners of both search warrants, the discovery of the video is arguably not part of the Court's consideration. However, even accepting Mr. Eggerson's discussion of this factual issue as true, it does not change the Court's analysis.

Investigator Mancuso sought additional warrants on April 4, 2017 to search the cell phones, including Mr. Eggerson's iPhone, recovered during the search on March 16, 2017. (Govt. Ex. 3.) An affidavit was provided in support of the application to search the iPhone, in which Investigator Mancuso described much of the same information regarding the drug transactions and added that he had specifically confirmed that the cell phone seized from Mr. Eggerson's person was the same phone that had been used to arrange the controlled buy. (*Id.*) In addition, Investigator Mancuso described a text message between Mr. Eggerson and an alleged co-conspirator that he suggested was incriminating. The warrant was issued on April 4, 2017, and authorized the search of, in relevant part, "Any video files stored within the cellular device." (*Id.*) The search was subsequently executed. (*Id.*)

Mr. Eggerson was ultimately charged federally as a felon in possession of a firearm. (*See* Indictment, ECF No. 1.) Mr. Eggerson now argues that the contents of the cell phone, specifically, the video evidence it contained, should be suppressed because the March 16 warrant was invalid and because it did not authorize the search of the cell phone that was ultimately conducted. For the reasons discussed below, this Court disagrees and recommends denying Mr. Eggerson's motion.

## II.    Analysis

After careful review, the Court finds that the search of Mr. Eggerson's iPhone did not violate the Fourth Amendment. First, although the March 16 search warrant was based on an imperfect articulation of the justification for the search of Mr. Eggerson's cell phone, suppression of the fruit of that search is unnecessary in light of the good faith exception to the exclusionary rule. Second, even if the first warrant was so flawed as to require suppression of the evidence seized, the second warrant was not. If the purported fruit of the first examination of Mr. Eggerson's cell phone is fully redacted from the April 4 search warrant application, that warrant was still based on an adequate showing of probable cause and provides an independent lawful basis for the search of the phone.

### A. The Fourth Amendment

The Fourth Amendment states that "no warrants shall issue, but upon probable cause." The standard for determining whether a search warrant had probable cause to issue is well-established:

> Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances. If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.

*United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016) (quotations and citations omitted.) Great deference is given to the judge who issued the warrant, *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008), and even "doubtful or marginal cases" should be decided in favor of the warrant's validity. *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Where the issuing judge relied only on the affidavit submitted with the warrant application to issue the warrant, a reviewing court may only use the information "found within the four corners of the affidavit" in determining if probable cause existed. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005). However, judges are permitted to "draw reasonable inferences from the totality of the circumstances" when making the probable cause determination. *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017).

Additionally, a warrant must describe with particularity the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. A warrant meets the particularity requirement when it is "sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014). Courts review the particularity of a warrant based on factors such as "the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011).

### B.    The March 16th Warrant

Mr. Eggerson raises three challenges to the validity of the first warrant: that it lacked particular definition of the places to be searched; that parts of it were not based on probable cause; and that officers searching it searched places they were not allowed to search. None of these arguments requires suppression of the evidence in this case.

### 1.    Particularity

Mr. Eggerson first argues that the warrant was not sufficiently particular, and he specifically complains that the authorization to search the entire cell phone's data was impermissibly broad. The Court disagrees. Indeed, the warrant specifically granted permission to search for and within phones, but did not permit the "general, exploratory rummaging" that the particularity requirement was designed to prevent. *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)); *see also United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008). Instead, it enumerated items such as records, communications, and items that tend to show ownership of firearms among the list of items to be seized and cell phones as places to be searched.

Mr. Eggerson's citation to *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015) is unavailing. In *Winn*, the court found that a warrant that authorized the search of "any or all files" contained on the cell phone of a man suspected of public indecency was overbroad. *Id.* at 919. The instant case is easily distinguishable. The challenged warrant in *Winn* sought seizure of files that "constituted evidence of the offense of Public Indecency," and the court concluded that there was no probable cause to believe that files such as the phonebook, contacts, text message, emails, call logs, WIFI information, and internet usage records would contain any evidence of the offense. *Id.* at 919–20. Here, the crime being investigated in conjunction with the warrant is not the misdemeanor of public indecency, but the felony of drug dealing, and courts must consider the purpose for which the warrant was issued in reviewing it. *Fiorito*, 640 F.3d at 346. It almost goes without saying that evidence of drug dealing such as drugs, scales, texts, calls, ledgers, emails, photos, videos, cash, firearms, financial records, location information and proof of weapons etc., can be

found in many more places and forms than evidence of public indecency. Mr. Eggerson's particularity challenge to the warrant does not succeed.

### 2. Probable Cause

Mr. Eggerson also argues that, even if it was sufficiently particular, the warrant's permission to search cell phones was issued without sufficient probable cause. This argument gives the Court greater pause. The testimony that forms the supporting affidavit does not describe the specific means by which the CI coordinated the controlled buys, and it makes no mention of either the role cell phones played in the specific drug transactions at issue or even the role they play in drug dealing generally, based upon the officer's experience. In fact, no mention is made of any telephone, let alone a cell phone, in Investigator Mancuso's testimony. However, given the modern ubiquity of cell phones as the primary means of communication for most people, it was not unreasonable for Judge Bjerke to infer that cell phones were being used in connection with the alleged drug dealing described by Investigator Mancuso. It was also reasonable to infer that cell phones found at a location associated with drug trafficking and on the person of an individual associated with the same had a fair probability of containing evidence of the crime. *See, e.g.*, *Brackett*, 846 F.3d at 992 ("[A]n issuing judge [may] 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.'" (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000))).

Mr. Eggerson's reliance on *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), is misplaced. Admittedly, the affidavit here conveys no explicit information to believe that Mr. Eggerson owned or was utilizing a cell phone, like the warrant affidavit at issue in *Griffith*. *Id.* at 1272–73. However, the court in *Griffith* noted that the defendant was unlikely to own a phone for several reasons not present here, such as Mr. Griffith's recent release from confinement, and the fact that Mr. Griffith's co-conspirator was known not to own a cell phone. *Id.* at 1273. In this case, in contrast, it was not unreasonable for the judge to infer that the controlled buys were arranged between the CI and Mr. Eggerson via cell phone. But despite this important distinction, *Griffith* is instructive because it similarly involves a request to seize and search a cell phone absent an articulated basis for doing so.

Ultimately, however, the Court needn't definitively rule on the close call this case presents regarding whether the March 16th warrant's permission to seize and search cell phones was based on an adequate showing of probable cause. Because the Court determines that good faith exception to the exclusionary rule applies, suppression is not required. *See, e.g.*, *United States v. Sulanke*, 121 F.3d 713, 1997 WL 417276 at *1 (8th Cir. 1997) (noting that courts need not resolve probable cause issue where good faith exception to the exclusionary rule applies).

### 3.     Good Faith Exception

If "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," the good faith exception to the exclusionary rule applies, even if a court later determines that the warrant was invalid. *United States v. Hopkins*, 824 F.3d 726, 733 (8th Cir. 2016) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)). However, the good faith exception is not without limitations. It cannot be invoked:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013).

Against this backdrop, even if the March 16th search warrant lacked probable cause regarding search of Mr. Eggerson's cell phone, the good faith exception applies. Mr. Eggerson has not argued that Investigator Mancuso made a false or misleading statement in his testimony; Judge Bjerke did not wholly abandon his judicial role; and there is no suggestion of facial deficiency. *See Leon*, 468 U.S. at 923. And the testimony in support of the warrant was not so lacking in indicia of probable cause so that belief in its validity was entirely unreasonable. On the contrary, because the

Court concludes that there may have been an adequate articulation of probable cause despite the many imperfections of Investigator Mancuso's testimony, law enforcement's belief in the same conclusion cannot be described as "entirely unreasonable."

### 4. Execution of the Warrant

Mr. Eggerson argues in the alternative that the warrant did not authorize the examination of the cell phone for evidence outside of the ongoing drug investigation, and thus Investigator Mancuso's review of the firearm video exceeded the permissible scope of the warrant. Essentially, he is arguing that because the video ultimately discovered contains evidence of gun possession rather than drug dealing, officers exceeded the scope of the warrant by finding it. This argument does not carry the day for three reasons.

First, the warrant expressly authorized a search for "items tending to show possession and/or ownership of firearms such as…documentation." (Govt. Ex. 2 at 2.) The issuing judge received specific testimony that Mr. Eggerson was likely to be in possession of a weapon.[2] And the Eighth Circuit has often held that a strong relationship between narcotics crimes and firearm possession exists, making the warrant's grant of permission to look for evidence of firearms rational and supported during a drug investigation. *See, e.g.*, *United States v. Strickland*, 594 F.3d 1031, 1033 (8th Cir. 2010) (noting that it is "a truism that often firearms are used to protect drugs," and that firearms and drugs are often related). A video documenting Mr. Eggerson allegedly firing an assault rifle is something that tends to show possession of a firearm, and that is relevant in the drug investigation. The video falls squarely within the scope of the search authorized by the warrant.

---

[2] Investigator Mancuso testified that in his experience, drug dealers who have been to prison, such as Mr. Eggerson, protect themselves with firearms. (Govt. Ex. 1, 9:22–10:4.) The fact that Investigator Mancuso testified about this in response to a question regarding the decision to seek a "no knock" warrant does not change the fact that there was probable cause to believe that Mr. Eggerson would be armed. Further, Investigator Mancuso testified that another investigator advised him that Mr. Eggerson may have brandished a handgun during an altercation just two weeks prior. (Govt. Ex. 1, 7:20–8:8.) This testimony more than established probable cause that firearms or evidence of firearms would be found at the Campbell, WI residence.

Second, even if they were not permitted to look for evidence of gun possession, officers were allowed to look in the videos and other parts of the phone for evidence of drug dealing.[3] The fact that what they found was evidence of a gun crime does not render its discovery beyond the scope of the warrant. Law enforcement officers are under no obligation to ignore evidence of a crime, even if that crime is different from the one they originally began the search for. Though not briefed by either party, the Court notes that plain view doctrine may be applicable here. The Eighth Circuit has not yet explicitly adopted or rejected plain view doctrine with respect to digital searches, and circuits that have wrestled with the question are somewhat split. *See, e.g.*, *United States v. Mann*, 592 F.3d 779, 784–85 (7th Cir. 2010) (applying plain view doctrine to a digital search); *United States v. Williams*, 592 F.3d 511, 521–22 (4th Cir. 2010) (holding in the alternative that plain view doctrine would apply to the challenged search); *but see United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1170–71 (9th Cir. 2010) (declining to apply plain view doctrine to a digital search); *United States v. Carey*, 172 F.3d 1268, 1272–74 (10th Cir. 1999) (same). But if the plain view doctrine applies in a digital arena, it is clear that Investigator Mancuso's discovery and viewing of the video would be protected. Investigator Mancuso was lawfully in a digital "place" when he viewed the video evidence, which he immediately knew to be incriminating because he knew Mr. Eggerson to be a felon prohibited from possessing firearms. *See, e.g.*, *United States v. Morgan*, 842 F.3d 1070, 1075 (8th Cir. 2016) (listing requirements for plain view doctrine to apply). However, the Court need not exclusively rely on this analysis in order to determine that the search was lawful.

Third, no authority requires suppression of the video in this instance. This case is distinguishable from *United States v. Hulscher*, No. 4:16-CR-40070-01-KES, 2017 WL 1294452 (D. S.D. Feb. 10, 2017), which Mr. Eggerson cites for the proposition that the video evidence must be suppressed. In *Hulscher*, the defendant was involved in

---

[3] The Courts notes that in this era of modern technology, videos are a common place to find evidence of drug dealing and use. *See, e.g.*, *United States v. Moore*, 639 F.3d 443, 448 (8th Cir. 2011) (video of defendant rapping about cocaine demonstrated knowledge of drug distribution); *United States v. Adams*, No. 15-cr-106 (PJS/FLN) 2016 WL 385965 at *13 (D. Minn. Jan. 7, 2016) (defendant had publicly posted videos of himself in his residence using drugs).

two separate investigations: one led by the Huron, South Dakota Police Department for counterfeiting and forgery and another led by the ATF for firearm violations. *Id.* at *2–3. The state investigation obtained a warrant to search the defendant's cell phone for data as it related to the counterfeiting and forgery investigation. *Id.* at *2. Nearly a year after the data had been obtained pursuant to a warrant, the ATF asked the state authorities to provide to them the data acquired from the defendant's phone. *Id.* at *3. The ATF did not request a separate warrant. *Id.* The ATF found evidence of firearms violations from the data provided by the state investigators and charged the defendant with several firearm offenses. *Id.* The *Hulscher* court found that the ATF's review of the data obtained from the state's search warrant amounted to a warrantless search, because the original warrant limited the state's search to data related to counterfeiting and forgery, not firearm offenses. *Id.* at *6–7.

The *Hulscher* facts are vastly different from those now before the Court. In Mr. Eggerson's case, Investigator Mancuso executed a valid search warrant and was properly searching the phone's data for evidence of drug dealing—including evidence of firearm possession and use—when he discovered the video in question. Here, unlike in *Hulscher*, the investigator performed a single search pursuant to a warrant that explicitly contemplated the existence of firearms. And indeed, the search resulted in evidence of a firearm offense being discovered. That the search led to different charges than were originally anticipated is immaterial. As such, the video of Mr. Eggerson allegedly shooting an assault rifle need not be suppressed simply because it shows illegal gun activity instead of illegal drug activity.

In sum, although the probable cause set forth in Investigator Mancuso's testimony is arguably inadequate as to the search and seizure of cell phones, the good faith exception to the warrant requirement precludes suppression. And Mr. Eggerson's argument that the warrant was executed improperly because the government searched beyond its dictates is unpersuasive.

### C. The April 4th Warrant

Even if the Court were to conclude that the March 16th warrant were so lacking in probable cause as to run afoul of the protections of the good faith exception, the April 4th warrant provides an independent source for the

discovery of video of Mr. Eggerson allegedly firing assault rifles. The independent source doctrine acts as a bar to the exclusionary rule "where the evidence was acquired through a source independent of the tainted search." *United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013). A warrant obtained after an invalid search provides such an independent source if law enforcement would "have applied for the warrant had they not acquired the tainted information; and…the application affidavits support probable cause after the tainted information has been redacted from them." *United States v. Swope*, 542 F.3d 609, 613–14 (8th Cir. 2008). The Court concludes that both conditions are met here.

It is almost beyond dispute that law enforcement would have applied for the April 4th warrant even if they had not begun to review the phone after its seizure. The cell phone of a suspected drug dealer, which has been used to set up controlled buys, is certainly "highly sought after" evidence. *See United States v. Suktipyaroge*, No. 17-cr-208 (WMW/SER), 2018 WL 3104253 at *9 (D. Minn. Jan. 11, 2018) (adopted in relevant part by *United States v. Suktipyaroge*, No. 17-cr-208 (WMW/SER), 2018 WL 1726266 (D. Minn. Apr. 10, 2018)). It is difficult to imagine that law enforcement officers investigating a drug dealer would not want to examine his phone for information about his suppliers and customers, evidence of his whereabouts during relevant times, information about his finances, and other relevant information that can be found on a phone. *See Riley v. California*, 134 S.Ct. 2473, 2489 (2014) ("[Cell phones] are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.")

Moreover, the April 4th warrant has sufficient probable cause even after the potentially tainted information discovered during the first search of the phone is redacted. Indeed, the second warrant is based on a stronger showing of probable cause as to the phone than the first. In addition to describing the drug transactions, Investigator Mancuso swore in his April 4th affidavit that he used his own cell phone to call the phone number that had been used by the CI to set up the controlled buys with Mr. Eggerson. (Govt. Ex. 3 ¶ 18.) When he

did so, the phone seized directly from Mr. Eggerson rang, and Investigator Mancuso's number was shown on the caller ID. (*Id.*) This critical information provides independent probable cause that evidence of a crime (namely, drug dealing) would be found on Mr. Eggerson's phone. Investigator Mancuso's further description of the allegedly incriminating text messages already located on the phone is not necessary to established probable cause. Based on this analysis the Court determines that the April 4th warrant for the search of Mr. Eggerson's iPhone is an independent source of the challenged video that precludes suppression.

For the reasons set forth above, the Court recommends that Mr. Eggerson's Amended Motion to Suppress Evidence from Search and Seizure (ECF No. 53) be **DENIED**.

Date: September 27, 2018          *s/ Katherine Menendez*
                                   Katherine Menendez
                                   United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.