# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,                         Criminal No. 18-110(1) (DWF/KMM)

               Plaintiff,

                                            **MEMORANDUM**
v.                                                          **OPINION AND ORDER**

Mark Anthony Eggerson,

               Defendant.

---

Daniel S. Le, Esq., Le Law Group, counsel for defendant.

Craig R. Baune and Harry Jacobs, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

---

## INTRODUCTION

This matter is before the Court on Defendant Mark Anthony Eggerson's ("Eggerson") motion for compassionate release in light of the COVID-19 pandemic. (Doc. Nos. 183, 195 (collectively, "Motion").)[1]  The United States of America (the

---

[1]    Eggerson filed a *pro se* motion for compassionate release on January 22, 2021. (Doc. No. 183 ("*Pro Se* Motion").)  Eggerson was appointed counsel on March 4, 2021. (Doc. Nos. 190, 192.)  Eggerson's counsel filed a supplemental motion (Doc. No. 195) and supporting memorandum (Doc. No. 196 ("Def. Memo.")) incorporating and expanding on the arguments in Eggerson's *Pro Se* Motion.  For the purposes of citation, the Court references only the supporting memorandum.

"Government") opposes Eggerson's Motion.[2]  (Doc. No. 201.)  For the reasons discussed

below, the Court respectfully denies Eggerson's Motion.

**BACKGROUND**

On May 15, 2019, a jury convicted Eggerson of one count of Felon in Possession

of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  (Doc. Nos. 120, 124.)

On December 6, 2019, this Court sentenced him to 180 months' imprisonment to be

followed by a 5-year term of supervised release.[3]  (Doc. Nos. 163, 165.)  On

December 18, 2019, Eggerson filed an appeal of his conviction that is currently pending

with the Eighth Circuit.  (Doc. No. 164.)

Eggerson is currently incarcerated at Oxford FCI in Oxford, WI with an

anticipated release date of April 8, 2031.  Federal Bureau of Prisons, Inmate Locator,

*https://www.bop.gov/inmateloc/* (last visited April 7, 2021).  Oxford FCI reports 10 active

COVID-19 case among its inmates and 0 among its staff, 678 inmates and 75 staff who

---

[2]     The Court also received and considered Eggerson's response to the Government's opposition (Doc. No. 207("Reply")), and numerous letters in support of his release (Doc. No. 197 ("Letters of Support")).

When Eggerson filed his Reply, he also unnecessarily filed a subsequent motion. (Doc. No. 206.)  The Court construes the subsequent motion as part of Eggerson's original Motion and denies it for the same reasons.

[3]     Eggerson's sentence represents a significant downward departure from his guidelines range of 235-293 months.  (*See* Doc. No. 166 at 1.)  The departure was based on Eggerson's history and characteristics, including his family ties and responsibilities. (*Id.*at 3.)  During Eggerson's sentencing hearing, the Court noted that because it was bound by a mandatory minimum sentence, it could not depart below 180 months' imprisonment.  (Doc. No. 187 at 33.)  The Court suggested that if it were not bound by the mandatory minimum, it might consider a sentence of 174 months' imprisonment. (*Id.*)

2

have recovered, and no inmate of staff deaths from the virus.  Federal Bureau of Prisons,

COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited April 7, 2021).

To date, the Bureau of Prisons ("BOP") has performed 939 tests for COVID-19 at Oxford

FCI with 701 of them positive for the virus, and 0 tests pending.  *Id.*  Moreover, 63 staff

and 133 inmates at the facility have been fully inoculated against COVID-19.  *Id.*

Eggerson, who is 36 years old, now moves for compassionate release on the

grounds that he is at increased risk of severe infection from COVID-19 because he

suffers from obesity, hypertension, pre-diabetes, inherited metabolic disorder, and is a

life-long heavy smoker.[4]  (Def. Memo. at 1, 4-9, 17-23; *see also* Doc. Nos. 198-1; 198-2

(collectively "Medical Records").)  He contends that the treatment he is receiving for

these conditions in prison is suboptimal.  (Def. Memo. at 5-7, 19-20.)  Eggerson also

expresses concern about his increased risk of contracting COVID-19 in a prison setting

and that prisoners in his facility are not being prioritized for the vaccine.[5]  (*Id.* at 9-11.)

He states that the sentencing factors set forth in18 U.S.C. § 3553(a) weigh in favor of

release and that he poses no risk to the safety of the community.[6]  (*Id.* at 24-25.)

---

[4]     Eggerson also asserts that prior to prison, he had no regular and ongoing access to healthcare care because he grew up in poverty, and that he has a family history of heart disease and cancer.  (Def. Memo. at 7-8.)

[5]     Eggerson's Medical records indicate that he contracted COVID-19 on October 7, 2020 and recovered by October 16, 2020 without treatment.  (Doc. No. 198-2 at 4). Eggerson asserts that there is no way to confirm whether he actually had the virus, or just a false positive test.  (Def. Memo. at 11.)

[6]     Eggerson asserts that if he did pose a risk, that risk could be mitigated through movement restriction and the use of monitoring devises.  (Def. Memo. at 24-25.)

Eggerson also asserts that he has committed himself to rehabilitation and that a modified sentence would be sufficient but not greater than necessary to punish him for his offense conduct.  (*Id.* at 25-26.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.  U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[7]

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with

---

[7]     While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants. The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant.  *See McCoy*, 981 F.3d 271 at 281; *United States v. Brooker,* 976 F.3d 228 at 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098 at 1110-11 (6th Cir. Nov. 20, 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020).  The Court also notes that the Eighth Circuit has not yet considered the issue.  Here, even if the Court were to exercise broader discretion, it would still find that Eggerson's circumstances do not meet the demanding standard for compassionate release.

[the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[8] *Id.*

The record reflects that Eggerson requested compassionate release from the warden at Oxford FCI sometime before it was denied on December 22, 2020. (Doc. No. 198-3 at 2 ("Denial").)[9] Notwithstanding, due to Eggerson's pending appeal with the Eighth Circuit, this Court lacks jurisdiction to consider his Motion. *United States v. Ledbetter*, 882 F.2d 1345, 1347 (8th Cir. 1989) ("[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.").

---

[8] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[9] Eggerson appealed the Denial on January 19, 2021. (Doc. No. 198-3 at 3.) His appeal was denied on January 21, 2021. (*Id.* at 4.) On February 13, 2021, Eggerson submitted a request for reconsideration. (*Id.* at 5.) The record does not reflect a response.

"The filing of a notice of appeal is an event of jurisdictional significance" because "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). "This rule applies with equal force to criminal cases." *Berman v. United States*, 302 U.S. 211, 214 (1937)). Here, neither party disputes that Eggerson has a pending appeal with the Eighth Circuit. While Eggerson asks that the Court modify his sentence so that he may serve the remainder of his sentence on home confinement (Reply at 3), the Court notes that release to home confinement is a placement decision solely within the Bureau of Prison's discretion to dictate. *See* 18 U.S.C. § 3624(c).

Even if the Court could consider Eggerson's Motion, it finds that Eggerson's circumstances do not meet the demanding standard necessary for compassionate release. While the Court recognizes that obesity, hypertension, and a history of smoking are factors that increase Eggerson's risk of severe illness from COVID-19, the Court finds no indication that any factor, alone or in combination with the presence of COVID-19 at Oxford FCI, has diminished or will diminish Eggerson's ability to provide self-care while in prison.[10] *See* Centers for Disease Control and Prevention, Coronavirus Disease:

---

[10] According to his Medical Records, Eggerson's body mass index is 32.6. (Medical Records at 29.) The Centers for Disease Control and Prevention ("CDC") recognizes both severe obesity (body mass index greater than 40), and obesity (body mass index greater than 30 but less than 40) as conditions that increase a person's risk of severe illness from COVID-19. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited April 7, 2021). While Eggerson contends that his

People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-
ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited April 7,
2021).

The Court also understands Eggerson's heightened concern about contracting
COVID-19 because he is in a prison setting, particularly after likely having contracted it
once already.  Nevertheless, this Court agrees with others that such a concern is largely
speculative and insufficient grounds for compassionate release.  *See, e.g.*, *United States v.
Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is
an insufficiently extraordinary and compelling reason to warrant release); *United States v.
Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v.
Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to
grant compassionate release based on possibility of severe reinfection).  Moreover, any
fear is largely mitigated by the fact that the BOP is actively vaccinating prisoners and
staff and has so far fully inoculated 63 staff and 133 prisoners against COVID-19 at

---

medical care in prison is suboptimal, his Medical Records reflect that his weight,
hypertension, and other conditions are being appropriately monitored.  (*See, e.g.*, Medical
Records at 29.)

The CDC does not recognize Eggerson's other medical conditions as risk factors
for severe illness from the virus.  *See* Centers for Disease Control and Prevention,
Coronavirus Disease: People with Certain Medical Conditions,
*https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions.html* (last visited April 7, 2021).  Even if it did, the Court still finds
no indication that any condition has diminished or will diminish Eggerson's ability to
provide self-care while in prison.

Oxford FCI.  Federal Bureau of Prisons, COVID-19: Coronavirus,

*https://www.bop.gov/coronavirus/* (last visited April 7, 2021).

It is truly unfortunate that so many inmates at Oxford FCI contracted COVID-19.

It is promising that the facility currently has just 10 active cases of the virus.  Federal

Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last

visited April 7, 2021).  Moreover, despite its once high infection rate, Oxford FCI was

able provide effective medical treatment such that all inmates who contracted the virus

successfully recovered.  *Id.*  Oxford FCI also continues to employ measures to mitigate

the spread of COVID-19.[11]  It is also promising that the BOP has successfully

administered over 111,000 doses of the COVID-19 vaccine to staff and inmates who wish

to receive it.  Federal Bureau of Prisons, COVID-19: Coronavirus,

*https://www.bop.gov/coronavirus/* (last visited April 7, 2021).  Sadly, until the vaccine is

---

[11]    Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited April 7, 2021).  Those steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits.  *See* Federal Bureau of Prisons, BOP Modified Operations, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited April 7, 2021).  The BOP periodically updates its Plan and is currently in Phase Nine.  Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited April 7, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited April 7, 2021).  Since March 2020, the BOP has transferred more than 23,000 inmates to home confinement.  *Id.*

more widely available, some level of continued spread is inevitable.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Eggerson did present an extraordinary and compelling reason, release is not appropriate because the Court cannot conclude that Eggerson does not pose a danger to the safety of the community after serving just a fraction of his sentence.[12]  The Court recognizes and commends Eggerson's strong desire to return to his family; however, the Court finds that the § 3553(a) sentencing factors weigh against release.  Specifically, the Court finds that such a significant sentence reduction would not adequately address the seriousness of the charges of Eggerson's conviction, promote respect for the law or provide a just punishment.[13]

## CONCLUSION

The Court lacks jurisdiction to consider Eggerson's Motion because of his pending appeal with the Eighth Circuit.  Even if review was proper, the Court finds that compassionate release is not warranted because Eggerson fails to present an extraordinary and compelling reason, the Court cannot conclude that Eggerson poses no

---

[12]     While the Court noted during Eggerson's sentencing that if it was not bound by the mandatory minimum guidelines, it may have considered a slightly lesser sentence, the Court never contemplated such a significant reduction.  Indeed, the Court finds that release at this time would undermine the seriousness of Eggerson's conviction.

[13]     Although the Court cannot conclude that release is appropriate at this time, the Court commends Eggerson for his commitment to rehabilitation and encourages him to maintain the effort.

danger to the safety of the community after serving such a small fraction of his sentence, and the § 3553(a) factors weigh against release.

### ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Mark Anthony Eggerson's motion for compassionate release in light of the COVID-19 pandemic (Doc. Nos. [183], [195], [206]) are respectfully **DENIED**.

Date:  April 9, 2021

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge